**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | | |
|---|---|---|
| DEE SIAM MANUFACTURING CO., LTD. and CIMC INTERMODAL EQUIPMENT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | | Court No. 26-03275 |

**COMPLAINT**

Plaintiffs Dee Siam Manufacturing Co., Ltd. ("Dee Siam") and CIMC Intermodal Equipment, LLC ("CIE"), by and through the undersigned counsel, White & Case, LLP, allege and state as follows.

**ADMINISTRATIVE DECISION TO BE REVIEWED**

1. Plaintiffs contest the final determination issued by the International Trade Administration of the Department of Commerce ("Department") in the antidumping duty ("AD") investigation of certain chassis and subassemblies thereof from Thailand (Case No. A-549-854) with respect to subject merchandise manufactured and exported by Dee Siam and imported by CIE. Notice of the final determination was published in the *Federal Register* on April 24, 2026. *Certain Chassis and Subassemblies Thereof from Thailand: Final Affirmative Determination of Sales at Less than Fair Value*, 91 Fed. Reg. 22130 (Apr. 24, 2026) ("*Final Determination*"); *see also* accompanying *Issues and Decision Memorandum for the Final Affirmative Determination of Sales at Less than Fair Value in the Investigation of Certain Chassis and Subassemblies Thereof from Thailand* (Apr. 20, 2026) ("*Final I&D Memo*").

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended ("Tariff Act"), codified as 19 U.S.C. § 1516a(a)(2)(B)(i).

## STANDING OF PLAINTIFFS

3. Plaintiff Dee Siam is a Thai producer/exporter of merchandise subject to the AD order at issue and Plaintiff CIE is a U.S. importer of subject merchandise. Plaintiffs both participated in the Department's investigation that resulted in the contested finding. Plaintiffs therefore are "interested part{ies}" within the meaning of Section 771(9)(A) of the Tariff Act, as amended, 19 U.S.C. § 1677(9)(A), and have standing to bring this action pursuant to Section 516A(d) of the Tariff Act, as amended, 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. The Department published the contested determination in the *Federal Register* on April 24, 2026. *Final Determination,* 91 Fed. Reg. 22130. The Department then published the AD order in the *Federal Register* on June 18, 2026. *Certain Chassis and Subassemblies Thereof from Mexico, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty Orders,* 91 Fed. Reg. 36806 (June 18, 2026). Plaintiffs filed their Summons, and are filing their complaint, within the time limits specified in 28 U.S.C. § 2636(c) and Rule 3(a)(2) of the Rules of this Court. Thus, this action is timely filed pursuant to Section 516A(a)(2)(A) of the Tariff Act, as amended, 19 U.S.C. § 1516a(a)(2)(A).

## PROCEDURAL HISTORY AND BACKGROUND

5. In the normal course of business, CIE imports chassis frames from Dee Siam in Thailand, further manufactures the chassis frames in the United States by installing additional components,

parts, and subassemblies to the chassis frames, and sells the finished chassis to the company's U.S. customers. The period of investigation ("POI") of the underlying investigation was calendar year 2024. CIE's operations in 2024 were severely disrupted because of U.S. Customs and Border Protection's ("CBP") investigation under the Enforce and Protect Act ("EAPA"), 19 U.S.C. § 1517, which was initiated following a disproven "evasion" allegation made by the Coalition of American Chassis Manufacturers, Petitioner in the underlying AD investigation.

6. CBP initiated the preceding EAPA investigation on April 24, 2023, to determine whether CIE evaded and antidumping and countervailing duty ("CVD") orders on chassis and subassemblies thereof from China (A-570-135, C-570-136). Letter from White & Case LLP to the Department, Re: *Notification of No Home-Market Sales; Request for Permission to Report Third-Country Sales; Request for Relief from Reporting Affiliate's Small Number of US Sales* (May 7, 2025), Exhibit 2 (CBP, *Notification of Determination as to Evasion – EAPA Case 7810* (Apr. 25, 2024)) ("*CBP Negative EAPA Determination*") at 4. CBP initiated the EAPA investigation in response to Petitioner's allegation that Chinese-origin chassis and subassemblies were transshipped through Dee Siam in Thailand, or that Dee Siam processed or assembled Chinese subassemblies and components in Thailand before shipment to the United States.

7. On July 24, 2023, CBP imposed "interim measures" in the EAPA investigation. As interim measures, CBP suspended liquidation of CIE's imports of chassis frames from Dee Siam as of April 23, 2023, and required the posting of AD/CVD cash deposits going forward (as if the Thai-origin chassis subassemblies were covered by the AD/CVD orders on China). See *CBP Negative EAPA Determination* at 4-5. The combined AD/CVD cash deposit rate for imports of chassis from China is 221%, making it cost prohibitive for CIE to import chassis and subassemblies thereof from China.

8. On April 25, 2024, CBP, after an exhaustive investigation, issued a negative EAPA determination, concluding that "substantial evidence does not exist for CBP to determine that {Dee Siam} transshipped and exported certain chassis and subassemblies of Chinese-origin through Thailand." *CBP Negative EAPA Determination* at 1. In particular, "CBP confirmed through extensive sales and production traces conducted at the onsite verification that {Dee Siam} was not using any Chinese-origin subassemblies for its production of chassis frames." *CBP Negative EAPA Determination* at 10.

9. For the duration of CBP's EAPA investigation, however, CIE's production and sale of finished chassis for the U.S. market were severely constrained while CBP's interim measures were in effect (and beyond considering Dee Siam's production and ocean transit). Evidencing this, CIE's cost of goods sold ("COGS") during the second half of fiscal year 2024 ("2024 H2"), when it resumed imports of chassis frames from Dee Siam, was approximately three times its COGS during the first half of the year ("2024 H1"), when it was limited to consuming declining inventory of chassis frames. *See* Letter from White & Case LLP to the Department, Re: *Antidumping Duty Investigation of Certain Chassis and Subassemblies Thereof from Thailand – Response to the Supplemental E Questionnaire* ("*Supp. E Response*") at Exhibit Supp. E-7. The same adverse impact on CIE's operations was clear from its income statements. *See Supp. E Response* at Exhibit Supp. E-7 (CIE US Statement of Operations, Years Ended December 31, 2024 and 2023).

10. In short, CIE's very low COGS for the first half of 2024 was the direct result of Petitioner's EAPA allegation – an allegation that was proved to be false during the course of CBP's investigation. To remedy this distortion, when calculating its further manufacturing general and administrative ("G&A") expense ratio ("FURMAN G&A Ratio") for the Section E Response, CIE used the G&A expenses and COGS from 2024 H2. *See Supp. E Response* at Exhibit Supp. E-7.

Absent this adjustment, CIE's aberrationally low COGS for 2024 H1 would result in a distortedly low COGS denominator in the FURMAN G&A Ratio calculation, making CIE's fiscal year 2024 FURMAN G&A Ratio much higher than it otherwise would have been but for Petitioner's disproven allegation that CIE was evading the AD/CVD orders on chassis from China. Alternatively, CIE proposed that the Department could multiply CIE's 2024 H2 COGS by two, and divide the company's full-year 2024 G&A by this amount.

11. Similarly, CIE's sales revenue was also distorted by virtue of Petitioner's false evasion allegation. During the first half of 2024, while CIE was unable to receive imports of chassis frames from Dee Siam due to CBP's interim measures, CIE's sales revenue was limited. *See Supp. E Response* at Exhibit Supp. E-7. Then, in 2024 H2, when CIE restarted imports from Dee Siam and resumed normal commercial operations, its sales revenue skyrocketed, more than tripling. *See Supp. E Response* at Exhibit Supp. E-7. In contrast, CIE's indirect selling expenses were stable, increasing by less than 3% from 2024 H1 to 2024 H2. *See Supp. E Response* at Exhibit Supp. E-7. Again, the same adverse impact on CIE's operations was clear from its income statements. *See Supp. E Response* at Exhibit Supp. E-7 (CIE US Statement of Operations, Years Ended December 31, 2024 and 2023).

12. In light of these circumstances, when calculating the indirect selling expense ratio ("ISE Ratio") in the Section C Response, CIE used the SG&A and net sales revenue from 2024 H2. *See Supp. E Response* at Exhibit Supp. E-7. Absent adjustment, CIE's aberrationally low sales revenue for 2024 H1 would result in a distortedly low denominator in the ISE Ratio calculation, making CIE's fiscal year 2024 ISE Ratio much higher than it otherwise would have been but for Petitioner's disproven allegation that CIE was evading the AD/CVD orders on chassis from China.

Alternatively, CIE proposed that the Department could multiply its 2024 H2 net sales revenue by two, and divide the company's full-year 2024 indirect selling expenses by this amount.

13. On September 24, 2025, the Department published in the *Federal Register* the preliminary determination in the underlying AD investigation. *Certain Chassis and Subassemblies Thereof from Thailand: Preliminary Affirmative Determination of Sales at Less than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 90 Fed. Reg. 46550 (Sept. 29, 2025) ("*Preliminary Determination*"); *see also* accompanying *Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Chassis and Subassemblies Thereof from Thailand* (Sept. 24, 2025) ("*Prelim. I&D Memo*"). Ignoring CIE's aberrational operations that resulted from Petitioner's disproven evasion allegation, the Department recalculated CIE's G&A Ratio and ISE Ratio "by using the full year 2024 financial statements." *Prelim. I&D Memo* at 22.

14. From December 9, 2025, through December 11, 2025, the Department verified the further manufacturing cost response of CIE. *See* the Department's Memorandum, Re: *Verification of the Cost Response of Dee Siam Manufacturing Co., ltd. in the Less-Than-Fair-Value Investigation of Certain Chassis and Subassemblies Thereof from Thailand* (Feb. 24, 2026) ("*FURMAN Verification Report*"). From January 12, 2026, through January 14, 2026, the Department verified the constructed export price response of CIE. *See* the Department's Memorandum, Re: *Less-Than-Fair-Value Investigation of Certain Chassis and Subassemblies Thereof from Thailand: Verification of CIMC Intermodal Equipment, LLC* (Feb. 20, 2026) ("*CEP Verification Report*").

15. On March 4, 2026, CIE submitted its case brief arguing that the time periods for the FURMAN G&A Ratio and ISE Ratio required adjustment to prevent a distorted dumping margin,

as elaborated above. *See* Letter from White & Case LLP to the Department, Re: *Chassis and Subassemblies from Thailand: Case Brief* (Mar. 4, 2026) ("*CIE Case Brief*") at 3-10.

16. On April 20, 2026, the Department issued the final determination in the AD investigation. *Final Determination*. The Department decided to continue to calculate CIE's FURMAN G&A Ratio and ISE Ratio based on CIE's fiscal year 2024 financial data, despite the distortive impact of Petitioner's false evasion accusation. *Final I&D Memo* at Comment 1.

17. During the AD investigation, CIE also reported that the company provided administrative services (*i.e.*, payroll, sales and marketing, purchasing, HR, inventory management, and technical support) at zero cost to support an affiliated company, CIE Manufacturing (Canada) Co., Ltd. ("CIE Canada"), with its production and sale of chassis in Canada. *See Supp. E Response* at Supp. E-10 – E-11; *CEP Verification Report* at 4 ("Company officials explained that CIE US assisted with accounting and technical support for CIE Canada's operations, but the Canadian companies are not involved in the production or sale of U.S. chassis."). Because the administrative services CIE performed for CIE Canada related to nonsubject merchandise (*i.e.*, CIE Canada's production of chassis for the Canadian market) – and not to CIE's general operations – CIE excluded the G&A expenses attributable to CIE Canada from its reported FURMAN G&A Ratio. *See Supp. E Response* at Supp. E-11 & Exhibit Supp. E-7.

18. Despite this, and without explanation, the Department preliminarily "included the G&A expenses . . . that were incurred by CIE US but excluded from the numerator of the {G&A Ratio} calculation." The Department's Memorandum, Re: *Cost of production and Constructed Value Calculation Adjustments for the Preliminary Determination – Dee Siam Manufacturing Co., Ltd.* (Sept. 24, 2025) ("*Prelim Cost Calc Memo*") at 4. In the final determination, the Department

continued "to include the G&A expenses CIE US incurred on behalf of its Canadian affiliate in CIE US' G&A expenses." *Final Determination* at Comment 2.

## STATEMENT OF CLAIMS

### COUNT 1: ADJUSTMENTS TO FURMAN G&A RATIO AND ISE RATIO

19. Paragraphs 1 through 18 are incorporated by reference.

20. The Department's decision to calculate CIE's FURMAN G&A Ratio and ISE Ratio based on CIE's fiscal year 2024 financial data was unsupported by substantial evidence and not in accordance with law. In making this decision, the Department ignored the highly unusual – if not unprecedented – facts in this case that necessitated use of a shorter time period. Using a one-year period, CIE's FURMAN G&A and ISE ratios were distorted by virtue of an evasion allegation made by Petitioner that CBP determined to be false. What is more, the distorted FURMAN G&A and ISE ratios grossly inflated Dee Siam's dumping margin. In fact, use of accurate FURMAN G&A and ISE ratios for CIE demonstrates that Dee Siam was not dumping subject merchandise during the POI at all. It was improper and inconsistent with the Department's statutory obligation to calculate dumping margins as accurately as possible to find dumping – or calculate an inflated dumping margin – under such extraordinary circumstances. *See Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103-04 (Fed. Cir. 1990); *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990); *see also Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012).

### COUNT 2: G&A EXPENSES INCURRED FOR NONSUBJECT MERCHANDISE

21. Paragraphs 1 through 18 are incorporated by reference.

22. The Department's determination to include the portion of CIE's G&A expenses incurred for non-subject merchandise (*i.e.*, to support the operations of its Canadian affiliate) was

unsupported by substantial evidence and otherwise not in accordance with law. The Department's established practice in calculating the G&A Ratio is to include ***only*** those items that relate to the general operations of the company as a whole. *See, e.g.*, *Certain Steel Concrete Reinforcing Bars from Turkey*, 70 Fed. Reg. 67665 (Dep't Commerce Nov. 8, 2005) (final results admin. review), and accompanying Issues and Decision Memorandum at 43 (emphasis added); *see also Husteel Co. v. United States*, 98 F. Supp. 3d 1315, 1357 (Ct. Int'l Trade 2015) (affirming Commerce's exclusion of the cost related to a payment guarantee from G&A, emphasizing that "what matters is . . . whether the loss is related to {the respondent's} general operations"). By including the portion of CIE's G&A expenses incurred for CIE Canada, the Department deviated from its established practice without adequate explanation and reached a conclusion that was unsupported by substantial evidence.

**PRAYER FOR RELIEF AND JUDGMENT**

WHEREFORE, Plaintiffs respectfully request that the Court:

(A) Enter judgment in favor of Plaintiffs;

(B) Hold and declare that the Department's calculations of CIE's FURMAN G&A Ratio and ISE Ratio are unsupported by substantial evidence and otherwise not in accordance with law;

(C) Grant Plaintiffs such additional relief as the Court may deem just and proper.

Respectfully submitted,

____________________

Jay C. Campbell
Cristina Cornejo
Matthew W. Solomon
Chunfu Yan
WHITE AND CASE LLP
701 Thirteenth Street, NW

Washington, DC 20005
(202) 626-3600

*Counsel to Plaintiffs Dee Siam Manufacturing Co., Ltd. and CIMC Intermodal Equipment, LLC*

Date: August 14, 2026

# CERTIFICATE OF SERVICE

**DEE SIAM MANUFACTURING CO., LTD. and CIMC INTERMODAL EQUIPMENT, LLC V. UNITED STATES**
**CIT Court No. 26-03278**

I, Jay C. Campbell of the law firm White & Case LLP, hereby certify that on August 14, 2026, pursuant to CIT Rule 3(f), I have served all interested parties who were a party to the proceeding listed below, by mailing copies of the foregoing Complaint by certified mail, return receipt requested:

**ON BEHALF OF PANUS ASSEMBLY CO., LTD.:**

Richard P. Ferrin
**Faegre Drinker Biddle & Reath LLP**
1500 K Street, N.W.
Washington, DC 20005

**ON BEHALF OF PANUS USA LLC:**

Raymond F. Sullivan
**Law Office of Raymond F. Sullivan**
10440 Little Patuxent Parkway, Ste. 900
Suite 900
Columbia, MD 21044

**ON BEHALF OF PITTS ENTERPRISES, INC. DBA DORSEY INTERMODAL:**

Emily Lawson
**Appleton Luff Pte Ltd**
1700 Seventh Ave.
Suite 2100
Seattle, WA 98101

**ON BEHALF OF HERCULES ENTERPRISES LLC:**

Prentiss Lee Smith
**Baker Donelson Bearman, Caldwell, Berkowitz, PC**
901 K Street NW, Ste. 900
Washington, DC 20001

**ON BEHALF OF U.S. CHASSIS MANUFACTURERS COALITION:**

Robert E DeFrancesco III
**Wiley Rein LLP**
2050 M Street, NW
Washington, DC 20036

______________________________
Jay C. Campbell